STATE ex rel. A. W. MORTENSEN v. JOHN COPELAND and Others.

December 2, 1898.

Nos. 11,307—(140).

Mandamus—Employment of Union Soldiers—G. S. 1894, § 8041.

G. S. 1894, § 8041, providing that honorably discharged Union soldiers and sailors, who are properly qualified, shall be preferred for appointment or employment in all departments of the public service, cannot be enforced by mandamus. The statute does not confer upon any person a right to an office or position in the public service which entitles him to maintain such proceedings in his own behalf.

Mandamus. Alternative writ from the district court for Ramsey county to John Copeland, Philip C. Justus, Ernest L. Mabon and Robert N. Hare, as members of the board of public works of the city of St. Paul, and James W. Smith, requiring them to remove said James W. Smith from the office of deputy clerk of said board and to appoint relator to that position. From an order, Willis, J., allowing a peremptory writ, respondents appealed. Reversed.

*Edmund S. Durment*, for appellants.

G. S. 1894, § 8041, providing for a preference to be given to honorably discharged Union soldiers and sailors in appointment and employment in public departments in the state, is unconstitutional. The act is confined to Union soldiers only, and is therefore in violation of Const. art. 4, § 33, prohibiting special or exclusive privileges to any individual, and of Const. art. 1, § 2, providing that no member of the state shall be deprived of any of the rights or privileges secured to any citizen thereof. For the same reason said act contravenes Const. art. 1, § 16, and U. S. Const. Amend. 14, § 1. See State v. Sheriff of Ramsey Co., 48 Minn. 236; Lavallee v. St. Paul, M. & M. Ry. Co., 40 Minn. 249; Nichols v. Walter, 37 Minn. 271; Johnson v. St. Paul & D. R. Co., 43 Minn. 222; State v. Billings, 55 Minn. 467; Kuhn v. Common Council, 70 Mich. 534; People v. Gillson, 109 N. Y. 389; City v. Levy, 26 La. An. 671; Yick Wo v.

Hopkins, 118 U. S. 356; Bardwell v. Collins, 44 Minn. 97; State v. Wagener, 69 Minn. 206.

The act, if constitutional, is simply directory, and does not give the old soldier any right to the employment nor any remedy in case the statute be disregarded. See Endlich, Interp. Stat. §§ 433, 436–438, 440; State v. Commissioners, 57 Oh. St. 86; State v. State Med. Exam. Board, 32 Minn. 324; County of Brown v. Winona & St. Peter Land Co., 38 Minn. 397; State v. Teal, 72 Minn. 37; People v. Wendell, 57 Hun, 362; People v. Commissioners, 65 Hun, 169.

*John H. Ives,* for respondent.

G. S. 1894, § 8041, is constitutional. State v. Miller, 66 Minn. 90. The appointment or employment of honorably discharged Union soldiers provided for in said act, is not a right or privilege within the meaning of Const. art. 1, § 2. See County Commrs. v. Jones, 18 Minn. 182 (199).

When for any reason quo warranto will not lie, and there is no other adequate remedy provided, the right to a disputed office may be settled in mandamus. 2 Dillon, Mun. Corp. (3d Ed.) § 846. See also High, Ex. Rem. § 324; People v. Sutton, 88 Hun, 173; People v. Rupp, 90 Hun, 145; 2 Cooley, Blackstone, 246, 265; State v. Sherwood, 15 Minn. 221; State v. Town of Somerset, 44 Minn. 549. Mandamus will lie where the person is an employee and not an officer. In re Ostrander, 12 Misc. 476. See also People v. Trustees, 54 Hun, 16; People v. Board, 19 App. Div. 567.

MITCHELL, J.

The board of public works of the city of St. Paul is an executive department of the city government. The city charter requires them to elect a clerk of the board, and authorizes them to employ such other help as may be necessary. Under this latter provision they have for some years employed a person to perform clerical and such other duties as they might require of him, whom they have designated "deputy clerk."

G. S. 1894, § 8041, provides

"That in every public department and upon all the public works of the state of Minnesota and the counties, towns, cities and villages

thereof honorably discharged Union soldiers and sailors, who are properly qualified, shall be preferred for appointment and employment."

It is under this statute that the relator has commenced these proceedings to compel the board of public works to remove the defendant Smith from the position of deputy clerk, and appoint the relator in his stead. The defendants other than Smith are the members of the board.

Stating the facts as strongly in favor of the relator as the evidence will justify, they are as follows: On February 14, 1898, the relator, who is an honorably discharged Union soldier, and properly qualified for appointment and employment to and in the position of deputy clerk of the board of public works, understanding that a vacancy in that position was about to occur, made written application to the board for appointment to that position when the first vacancy occurred, and at the same time furnished the board with proof that he was an honorably discharged Union soldier, and of his entire competency to perform all the duties of that position; that he was the only honorably discharged Union soldier or sailor who applied for the appointment; that a vacancy did occur in the afternoon of the same day, but the members of the board, in violation of the statute, failed to appoint him, and appointed the defendant Smith, who was not an honorably discharged Union soldier or sailor.

The proceeding was tried in the district court upon evidence introduced by the respective parties, and the court made findings of fact and conclusions of law, one of which was that the relator was entitled to a peremptory writ of mandamus, and then added, "Let a peremptory writ of mandamus issue accordingly."

The judge made no order directing a judgment to be entered, and none other.than the above direction ever was entered. Relator's counsel makes the point that this is a mere order for judgment, and therefore not appealable. Under the old practice, as we recollect it, this would have been the final judgment of the court upon which the writ would issue, and no other or further judgment would have been necessary. This court has assumed that this was still the proper practice, and held that an appeal would lie from an

order allowing a peremptory writ of mandamus. State v. Webber, 31 Minn. 211, 17 N. W. 339. But, upon our attention being called to G. S. 1894, §§ 5982, 5983, we have come to the conclusion that the statute contemplates the entry of a formal judgment upon the court's conclusions of law, the same as in an ordinary civil action. This, we think, is the regular and proper practice under the statute.

But in this case, the trial judge, having in mind the old practice, which had the sanction of this court as being still in force, evidently intended this as the final judgment upon which the writ was to issue. If a writ had issued upon it, it would have been valid, although irregular.

We shall therefore hold it to be the judgment of the court, although an irregular one, and, consequently, that an appeal will lie from it.

2. Counsel for the respondents below (appellants here) has made an exhaustive and able argument that this statute giving to honorably discharged Union soldiers a preference in public employment is unconstitutional, as being prohibited class legislation.

In State v. Miller, 66 Minn. 90, 68 N. W. 732, we held that the law was constitutional; but there was no argument of the question by the county attorney in that case, and no reason was suggested by him why the act was invalid. But we shall not enter upon the consideration of that question here, but assume, for the purposes of this case, that the statute is both valid and mandatory, and not merely directory or advisory to the appointing bodies or officers. But, conceding this, we are of the opinion that under the statute the relator has no right to or interest in the office or position which entitles him to maintain this proceeding.

The statute does not confer upon an honorably discharged Union soldier or sailor any legal right to an office or employment. It does not say that he shall have the right to be appointed. Neither does it provide any method for determining which one of several shall be appointed, nor does it provide any procedure for ousting another appointee, and installing a Union soldier or sailor in his place. It does not limit the appointment to those soldiers or sailors who have applied for the appointment. A man cannot acquire any right or priority of right to a public office or position by applying for

the appointment. Any other honorably discharged Union soldier or sailor, who is qualified, has as much right as the relator to institute mandamus to compel the board to remove the present incumbent, and appoint himself in his place.

The appointing power is in the board, and not in the courts; and, even if the latter could compel the former to remove the present incumbent, they could not compel the board to appoint the relator. The board would still have discretion as to what soldier or sailor they would appoint. In refusing to appoint the relator, they violate no legal right of his, but at most merely violate the general mandates of the statute. Hence, if a writ of mandamus was to issue, it would be merely to compel the board to execute the mandates of the law, not in favor of the relator in particular, but in favor of all persons within its provisions. This would be merely to duplicate the act of the legislature in enacting the statute. Such is not the office of a writ of mandamus.

Again, the determination of the qualification of a person for employment in the public service involves the exercise of judgment and discretion, which is vested in the appointing officers or body, and not in the courts. But, if a person can maintain mandamus to compel his own appointment, this would necessarily require the courts to hear evidence and pass upon the fitness of the relator, and thus would devolve the appointing power upon the courts,—a result which finds no support in the statute.

All this, and much more which might be suggested, satisfies us that disobedience or disregard of the directions of this statute does not violate the legal rights of any particular person, so as to enable him to maintain any civil proceedings in his own behalf. The wrong or offense is merely a public one, and the only remedy, if any, is by removal of the appointing officers for malfeasance in office, or, this failing, by appeal to the people. We can conceive of a statute constituting a full body of civil service rules, which, when applied to the facts, would identify the particular person entitled to an appointment so as to give him a legal right to it which could be enforced by him. But this is not such a law.

It may be said that our construction of this statute renders it practically nugatory. This will undoubtedly be so when appoint-

ing officers or bodies are disposed to disregard the law, but this is the result either of the defective character of the statute, or of the inherent nature of the subject of which it treats, or of both.

The order or judgment appealed from is reversed, and the proceeding remanded, with directions to the court below to discharge the order to show cause.