## STATE EX REL. ENRICO ABATI v. JOHN A. MacDONALD AND OTHERS.[1]

January 15, 1932.

No. 28,706.

[1]Reported in 240 N. W. 361.

*Farnand & Galob,* for appellant.
*John E. Hario,* for respondents.

DIBELL, J.

Alternative writ of mandamus to compel the defendants, who constituted the firemen's civil service commission of Hibbing, to give the relator an examination upon his application for a position in the village fire department. The demurrer of the respondents to the writ was sustained, and the relator appeals.

The relator is an honorably discharged soldier of the world war. The defendants are the members of the civil service commission of Hibbing, appointed under L. 1929, p. 54, c. 57, approved March 11, 1929. This statute provides that a firemen's civil service commission may be created in cities not of the first class and in villages having a population of 2,000 inhabitants or more having a regularly employed and paid municipal fire department.

Section 1 provides:

"There may be created in every city except cities of the first class, and in villages having a population of 2,000 inhabitants or more, and having a regularly employed and paid fire department, a firemen's civil service commission with powers and duties as hereinafter provided."

Hibbing is within the class. It adopted the provisions of the statute by resolution in the manner provided by § 3, which need not be set forth, and thereby it became subject to it.

Section 7 of the statute provides:

"The commission shall have absolute control and supervision over the employment, promotion, discharge, and suspension of all officers and employees of the fire department of such city or village and these powers shall extend to and include the chief and assistant chief of such, and all inspectors, fire wardens, electricians, engineers, auto mechanics, clerks and other persons exclusively engaged in the fire prevention and protection service in said city or village."

Section 8 provides in part as follows:

"The commission shall, immediately after its appointment and from time to time thereafter, make, amend, alter and change rules to promote efficiency in the fire department service and to carry out the purposes of this chapter. The rules shall provide among other things, for:

"(a) The classification of all offices and employments in the fire department.

"(b) Public competitive examinations to test the relative fitness of applicants. * * *

"(d) The creation and maintenance of lists of eligible candidates after successful examination in order of their standing in the examination and without reference to the time of examination. Such lists shall be embraced in an eligible register. The commission may by rule provide for striking any name from the eligible register after it has been two years thereon.

"(e) The rejection of candidates or eligibles who, after the entry of their names shall fail to comply with the reasonable rules and requirements of the commission in respect of age, residence, physical condition or otherwise, or who have been guilty of criminal, infamous, or disgraceful conduct, or of any wilful misrepresentation, deception or fraud in connection with the examination or in connection with their applications for employment.

"(f) The certification of the name standing highest on the appropriate list to fill any vacancy.

\* \* \* \* \*

"(h) Promotion based on competitive examination and upon records of efficiency, character, conduct, and seniority."

Section 10 provides:

"The commission shall ascertain the duties of each office, position and employment in the fire protection service of such city or village, and designate by rule as well as may be practicable the grade of each office, employment or position. The commission shall prescribe standards of fitness and efficiency for each office, position and employment and for each grade, and adapt its examinations thereto."

Section 12 provides in part:

"The names of those found eligible upon examinations after giving credit for character and previous successful experience, shall be entered with their addresses and percentages on the eligible register."

The civil service commission fixed the lowest age of applicants to be employed in the fire department at 35. It is not claimed that this is an unreasonable regulation. A pension or relief to firemen, paid in part by the public, is common; and it is thought but fair that they should be employed at an age which permits considerable service during their active years.

The soldiers preference act invoked is G. S. 1923 (1 Mason, 1927) § 4368. It is prior to the act of 1929. The relator's application was made after the 1929 act, and prior to the act of 1931, hereafter noted, amending the soldiers preference act. Section 4368, in referring to the soldiers who are preferred, provides:

"The persons thus preferred shall not be disqualified from holding any position hereinbefore mentioned on account of his age or by reason of any physical disability, provided such age or disability does not render him incompetent to perform properly the duties of the position applied for and when such soldier, sailor or marine shall apply for appointment or employment under this act, the officer, board or person whose duty it is, or may be, to appoint or employ such person to fill such position or place, shall before ap-

pointing or employing anyone to fill such position or place, make an investigation as to the qualifications of said soldier, sailor or marine for such place or position, and if he is a man of good moral character, and can perform the duties of said position applied for by him, as hereinbefore provided, said officer, board or person shall appoint said soldier, sailor or marine to such position or place of employment."

This statute has been held constitutional a number of times; and in State ex rel. Meehan v. Empie, 164 Minn. 14, 204 N. W. 572, it was held that the right to preferment depended upon efficiency and not upon relative efficiency. There was no civil service statute involved. The relator was 35 years and nine months old. He was beyond the age limit fixed by the commission. He had done five years' service in the department. This service was followed by an intermission of six years to the time of his application. He is competent and able to perform the duties of the employment.

The statute of 1929 with the rules of the commission involve somewhat the same question as that involved in State ex rel. Schultz v. Scott, 163 Minn. 190, 203 N. W. 774, and State ex rel. Giles v. Scott, 171 Minn. 208, 213 N. W. 738, where the right to a soldier's preference was denied.

It is apparent that the act of 1929 was intended as a law complete in itself for the regulation and control of employment in fire departments in the municipalities to which it should be made applicable. It provides specifically for an examination, for the certification of approved applicants, and specifically for the fixing of an age limit at the time of employment. It has in view the securing of a good class of men and protecting them in their places when employed. It contains no clause repealing other legislation; but it is complete in itself covering directly and specifically the regulation of fire departments in the municipalities which choose to come under its provisions. If the voters of the municipality are dissatisfied the commission may be abolished in the way provided by § 18. Chapter 57 was considered in State ex rel. Benson v. Peterson, 180 Minn. 366, 230 N. W. 830.

Counsel for relator call attention to L. 1931, p. 442, c. 347, approved April 25, 1931, amending and supplementing the soldiers preference act. This act was held not retroactive in State ex rel. Kinler v. Rines, 185 Minn. 49, 239 N. W. 670. The facts in this case arose before its approval, and the relator gains nothing from it.

Order affirmed.