STATE EX REL. JOHN WILLIAM KANGAS v. JOHN A. McDONALD AND OTHERS.[1]

February 3, 1933.

No. 29,198.

¹Reported in 246 N. W. 900.

158

*Victor J. Hultstrand* and *Clarence H. Kleffman,* for appellants (respondents below).

*I. R. Galob,* for respondent (relator below).

HILTON, JUSTICE.

Mandamus proceeding by John William Kangas (respondent here) to compel the Hibbing civil service commission to certify his name to the appointing officer of the Hibbing fire department, on the ground that he was entitled under L. 1931, p. 442, c. 347, Mason, 1931 Supp. §§ 4369-1 to 4369-3, to a preference as an honorably discharged veteran of the world war. A demurrer was interposed to the petition. The court, Freeman, J., overruled the demurrer. An answer was served, and the case was tried to the court, Magney, J. Findings of fact and conclusions of law were made granting the relief asked. A motion for a new trial was denied, and this appeal taken.

Respondent is a resident of Hibbing and has lived there for 30 years. He served in the army of the United States during the world war and received an honorable discharge. The fire department of Hibbing operates under a civil service commission (the individual appellants here) formed under and pursuant to L. 1929, p. 54, c. 57, Mason, 1931 Supp. §§ 1933-23 to 1933-41. Its rules and regulations were drawn pursuant to that law, which does not provide for preference to honorably discharged soldiers; such soldiers and nonservice men take the civil service examination on the same footing. The fire department, organized under a two-platoon sys-

tem, was later changed to a three-platoon system, thus requiring eight additional firemen.

Under the rules of the commission, applications for examination (mental and physical) are made on printed forms. The applications contained the question whether claim was made for preference by reason of military service under L. 1919, p. 194, c. 192 (G. S. 1923 [1 Mason, 1927] §§ 4368, 4369). This question was answered by Kangas in the affirmative. Kangas with 100 others took the mental examination on March 21, 1931. He passed and was so notified on April 23, 1931, and was requested to take the physical examination on April 25, 1931, at eight o'clock p. m. This he did. The final mark of each applicant was the average of the two examinations. The passing mark was 75. On May 15, 1931, Kangas was notified by letter that he had received a mark of 85.24, and that he was No. 19 on an eligible list of 33. Such a list was made up on May 27. Under the rules of the commission two more names were certified to the appointing officer than there were positions to fill. On May 27 the alternative writ of mandamus issued. The ten who had the highest marks were so certified on May 28. In that list were four ex-service men. On June 1 the eight standing highest on the certified list were appointed.

Kangas is not entitled to the relief asked unless L. 1931, p. 442, c. 347, Mason, 1931 Supp. §§ 4369-1 to 4369-3, gives it to him. That law reads in part as follows:

"An act relating to the appointment, employment, promotion and removal of employees of the state and other governmental agencies, and to the application thereto of Mason's Minnesota Statutes of 1927, Sections 4368, and 4369, known as the Veterans' Preference Law, and acts amendatory thereof.

"Section 1. The provisions of Mason's Minnesota Statutes of 1927, sections 4368 and 4369, known as the Veterans' Preference Law, and acts amendatory thereof, shall apply to and govern the appointment, employment, promotion, and removal of all employees of the state and of all other governmental agencies within the state enumerated in said sections and amendatory acts, notwithstanding

160

any provision to the contrary in any other existing law or in any city charter relating thereto.

"Sec. 3. All acts, parts of acts, and city charter provisions inconsistent herewith are hereby superseded, modified, or amended so far as necessary to give effect to the provisions of this act."

This court in State ex rel. Abati v. MacDonald, 185 Minn. 194, 240 N. W. 361, held that L. 1929, p. 54, c. 57, Mason, 1931 Supp. §§ 1933-23 to 1933-41 (firemen's civil service law) was complete in itself. The court stressed the fact that the 1929 law contained no repealing clause of other legislation, and, having been passed subsequent to the soldiers preference act, it was controlling; in other words, that under the 1929 law the soldiers preference act had no application. In commenting on somewhat the same situation in State ex rel. Schultz v. Scott, 163 Minn. 190, 192, 203 N. W. 774, 775, this court said:

"In such a case, if the rules are followed, other applicants who are honorably discharged soldiers and sailors, but who did not rank as high in the examination, will be unable to have their names placed before the appointing officer. Such a situation should not be permitted to arise and the rules should be amended to make them fit in with the provisions of chapter 192, p. 194, L. 1919, but of course that is a matter which can only be considered by officials who make the rules." See also State ex rel. Giles v. Scott, 171 Minn. 208, 213 N. W. 738.

The desired result could of course be secured by appropriate legislative act.

The constitutionality of our soldiers preference laws has been sustained in numerous cases and can no longer be questioned in this state. State ex rel. Kinler v. Rines, 185 Minn. 49, 239 N. W. 670; State ex rel. Abati v. MacDonald, 185 Minn. 194, 240 N. W. 361; State ex rel. Meehan v. Empie, 164 Minn. 14, 204 N. W. 572, 573; 4 Dunnell, Minn. Dig. (2 ed. & Supp.) § 6560.

The 1931 act is not violative of the equality provision of the state constitution (art. 1, § 2). It merely makes operative again the 1919 soldiers preference law.

That law "fixes the standard of qualifications and fitness. * * * It intends that the soldier applicant, to be entitled to preferential appointment, shall be capable of performing the duties of the position in a reasonably efficient manner. It does not intend that a soldier shall have a preference if he can perform the duties of the position merely after a fashion, though not with genuine efficiency. If the applicant has the degree of fitness stated, his relative efficiency, when compared with that of his competitors, is unimportant." State ex rel. Meehan v. Empie, 164 Minn. 14, 16, 204 N. W. 572.

Such ex-service man's fitness and qualifications must, in so far as the examination given is concerned, be judged by the same standard as that of nonservice men. A statute prescribing a lower passing mark for service men than for nonservice men would doubtless violate the equality provision of the constitution. State ex rel. Boyd v. Matson, 155 Minn. 137, 193 N. W. 30. Nothing of that nature is here found. The passing mark is the same for all applicants. Attainment of that mark establishes qualification. No attempt is made by our veterans preference law to place incompetent ex-soldiers in public positions.

It has been the laudable purpose of the Minnesota lawmakers, declared on numerous occasions, to give a well-earned preference in appointments in the public service to those who have honorably served the nation in its time of peril. There are many sound reasons therefor, even if efficiency and the good of the service alone are considered. See suggestion in 55 A. S. R. 370 (166 Mass. 595, 44 N. E. 627, 34 L. R. A. 58, id.) "that such a person [veteran] would be likely to possess courage, constancy, habits of obedience, and fidelity, which are valuable qualifications for any public office or employment, * * *."

A reading of L. 1931, p. 442, c. 347, Mason, 1931 Supp. §§ 4369-1 to 4369-3, convinces us that its purpose, in part, was undoubtedly to cover a situation such as is here presented. We are of the opinion that L. 1929, p. 54, c. 57, was amended by the 1931 law.

L. 1931, p. 442, c. 347, Mason, 1931 Supp. §§ 4369-1 to 4369-3, was approved by the governor on April 25, 1931, the date that

Kangas took the physical examination. The results of the physical examination were not arrived at until several days thereafter. The relative standings of the various applicants could not be ascertained until the final marks in the mental and physical examinations had been averaged. This tabulation was not completed for some time. The names on the eligible register were not certified to the appointing officer until May 28. The suggestion that the 1931 law was not operative as far as Kangas was concerned is without merit.

All points raised by appellants have been considered. We hold that Kangas was entitled to have his name placed on the list certified to the appointing officer and that the decision of the lower court was correct.

Affirmed.

