THE STATE OF KANSAS, *ex rel. I. F. Benest, as County Attorney, etc., and Fred S. Jackson, as Attorney-general, etc., Plaintiff,* v. D. S. MCNEILL *et al., Defendants.*

No. 16,896.

OFFICERS—*Appointment—Veterans' Preference Law.* In an action to oust a county assessor from office on the ground that his appointment was made in violation of the old soldier preference law (Gen. Stat. 1909, § 7879), the issue being whether the county commissioners acted in good faith, judgment rendered for the defendant on the evidence.

Original proceeding in quo warranto. Opinion filed July 9, 1910. Judgment for the defendants.

*Fred S. Jackson,* attorney-general, and *I. F. Benest,* county attorney, for the plaintiff.

*R. P. Kelley,* for the defendants.

*Per Curiam:* Among the candidates for county assessor of Greenwood county were two who were entitled to the benefit of the veterans' preference law.

(Laws 1907, ch. 374, § 1, Gen. Stat. 1909, § 7879.) The county commissioners appointed D. S. McNeill, who was not a soldier. This action is brought by the state against McNeill to remove him from office upon the ground that his appointment violated the statute referred to. The commissioners were made defendants at their own request.

Evidence has been introduced tending to show that each of the old soldier candidates was entirely competent to perform the duties of the office. Witnesses whose sincerity can not be questioned have expressed their opinion to that effect. There is also evidence of a contrary tendency, and witnesses of seemingly equal sincerity have said that these candidates lacked the physical endurance necessary to meet the requirements of the situation, and were perhaps deficient in the knowledge of the present values of property, although their clerical fitness was conceded. The question before us is not whether the old soldier applicants were in fact competent. That question the county commissioners were required to decide, and their decision must be final unless it. is shown that they acted in bad faith. (*The State v. Addison*, 76 Kan. 699; *Dever v. Platt,* 81 Kan. 200.) Two witnesses attributed to one of the commissioners expressions unfavorable to the enforcement of the preference statute, but the construction placed upon his language is entirely inconsistent with his own testimony, and the probability seems to be that he was misunderstood. With this exception the evidence on the part of the plaintiff goes rather to show that the commissioners were mistaken in their judgment as to the competency of the applicants, than that they intended to disregard the law or failed to interpret it properly. The evidence for the defendants showed abundant room for a difference of opinion on the facts, and upon the whole record we find no basis for a determination that the commissioners acted in bad faith.

The statute evidently contemplates that the county assessor shall supervise the work of his deputies, the township trustees, since he is authorized to suspend them for incompetency or other cause. (Laws 1909, ch. 251, § 4, Gen. Stat. 1909, § 9356.) It also requires him to assess any omitted property. (Laws 1909, ch. 251, § 6, Gen. Stat. 1909, § 9358.) Clearly his duties might involve considerable traveling and personal activity. In a publication of the state tax commission on the subject it is said:

"It has been suggested that the law does not require much from the county assessors, but to the commission it seems that he will be the hardest worked officer of the county; this is upon the assumption that he will be assiduous in his work, and if he is not he should either resign the office or be removed therefrom." (Rev. Duties of Assess. 1910, p. 7.)

How much physical effort is likely to be required of a county assessor depends somewhat upon local conditions. If the county commissioners made an over-estimate in this respect the fact does not argue a want of good faith.

The plaintiff contends that the commissioners did not make a sufficient investigation of the qualifications of the old soldier applicants. It appears, however, that at the time the appointment was made they were fairly well advised upon the subject from their own knowledge and from inquiry. They were not required to hold a formal hearing. (*Ray v. Miller*, 78 Kan. 843.) They did not refuse to listen to anything that was offered, although a committee that went before them failed to be heard, apparently through a mutual misunderstanding.

Judgment for the defendants.